**SO ORDERED.**

**SIGNED this 30 day of September, 2014.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                              CASE NO. 10-09744-8-DMW

**MICHAEL FRANK WHITEHEAD, SR.,**

                                                                    CHAPTER 7

        DEBTOR.

## MEMORANDUM OPINION AND ORDER
## REGARDING SECTION 523(a) AND JURISDICTION

This matter comes on to be heard upon the Debtor's Motion for Award of Sanctions, Damages, and Attorneys' Fees for Violation of the Discharge Injunction ("Motion for Sanctions") filed by Michael Frank Whitehead, Sr. ("Debtor") and the response filed by Bennie S. Wallace and Kristen Wallace ("Wallaces"). The court conducted a hearing in Raleigh, North Carolina on June 19, 2014. Jason L. Hendren, Esq. and Rebecca F. Redwine, Esq. appeared for the Debtor, and Edward H. Maginnis, Esq. appeared on behalf of the Wallaces. At the conclusion of the hearing, the court took the matter under advisement. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.  BACKGROUND

  1.  General.

  a.  The Debtor is an individual who has been involved in various real estate development projects in North Carolina. The Debtor is the President and sole shareholder of MacGregor Development Company ("MacGregor"). MacGregor was the sole Member Manager of South Forty Ventures, LLC ("South Forty") until it was administratively dissolved by the North Carolina Secretary of State on August 13, 2010.

  b.  On November 14, 2008, MacGregor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code and operated as a debtor-in-possession pursuant to 11 U.S.C. § 1107.

  2.  Initial Complaint in Superior Court.

  a.  On or about September 23, 2009, the Wallaces filed a Complaint ("State Court Action") in Wake County Superior Court ("Superior Court") against South Forty, alleging causes of action arising out of the Wallaces' purchase of real property from South Forty. Neither MacGregor nor the Debtor was named as a defendant in the Complaint.

  b.  The Wallaces obtained an Entry of Default against South Forty in the State Court Action on October 30, 2009, and on March 12, 2010, the Wallaces were granted summary judgment in the State Court Action against South Forty.

  3.  Initial Bankruptcy Filing.

  a.  The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on November 24, 2010 ("Petition Date").

  b. The Debtor did not list the Wallaces as a creditor on the schedules filed with the court and asserts that he was not aware of the claim against him during the bankruptcy case. The Wallaces assert they had no knowledge of the Debtor's bankruptcy case while it was pending.

  c. The Debtor's case was declared a "no asset" case on January 18, 2011.[1] On October 24, 2011, the court granted a discharge ("Discharge") to the Debtor pursuant to 11 U.S.C. § 727.

  4. <u>Amended Complaint in Superior Court.</u>

  a. On January 22, 2013, despite the fact that judgment had already been rendered in the State Court Action, the Wallaces filed a First Amended Complaint ("Amended Complaint") in the State Court Action, adding MacGregor[2] and the Debtor as defendants. According to Mr. Maginnis, the Wallaces amended the Complaint, rather than adding MacGregor and the Debtor to the post-judgment supplemental proceedings to enforce the summary judgment award, because the Superior Court does not allow judgment creditors to do the latter.

  b. The Amended Complaint alleges the following causes of action:

    i. Negligence per se;

    ii. Fraudulent Concealment of a Material Fact;

    iii. Fraudulent Misrepresentation;

    iv. Fraud;

---

[1] Holmes P. Harden, Esq. ("Trustee"), the Chapter 7 trustee, declared the case a "no asset" case in the Trustee's Report of No Distribution ("TROND") entered January 18, 2011. The TROND was subsequently withdrawn on August 23, 2011, but on January 11, 2012, the Trustee again declared the case a "no asset" case.

[2] At the time the Amended Complaint was filed, the MacGregor Chapter 11 case was still pending. Interestingly, it appears that the Wallaces failed to obtain relief from the automatic stay to file the Amended Complaint. The action against MacGregor may be void.

3

          v.          Unfair and Deceptive Trade Practices; and

          vi.          Breach of Warranty Against Encumbrances.

c. On March 25, 2013, after speaking to Mr. Maginnis over the phone regarding the Amended Complaint, Mr. Hendren sent an email to Mr. Maginnis to confirm what they had discussed. The email acknowledged disagreement between the parties as to whether the Wallaces' claim ("Claim") was discharged in the Debtor's case. At the conclusion of the email, Mr. Hendren indicated his understanding that if he determined the Claim was not in fact discharged, the Debtor could proceed to file an Answer[3] to the Amended Complaint.

d. On May 23, 2013, Mr. Maginnis sent an email to Mr. Hendren which stated the Wallaces' position that the Superior Court is the appropriate venue for State Court Action to be heard. The email further stated that the Wallaces would allow the Debtor until June 6, 2013 to file an Answer to the Amended Complaint.

e. On June 6, 2013, the Debtor filed an Answer which stated as its first defense[4] that the State Court Action is barred as to the Debtor because the alleged Claim was discharged in the Debtor's bankruptcy case.

f. For seven months, the Wallaces took no further action against the Debtor in the State Court Action, but on January 22, 2014, the Wallaces served their first set of discovery requests on the Debtor. Upon receiving the discovery requests, the Debtor filed a Motion for Protective Order in the State Court Action, asserting that he should not

---

[3] N.C. Gen. Stat. § 1A-1, Rule 4(b) requires that a defendant file an answer within 30 days after a summons is served upon him. Mr. Maginnis agreed to let the Debtor file a late Answer to the Amended Complaint.

[4] The Debtor also stated five other defenses, including that the Wallaces had failed to state a claim upon which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

be required to comply with discovery requests because a determination of whether the Claim was discharged must first be made by the bankruptcy court.

5. <u>Reopened Bankruptcy Case.</u>

    a. On March 25, 2014, the Debtor filed a Motion to Reopen Case and the Motion for Sanctions.

    b. The Debtor then filed an Adversary Complaint with this court on June 2, 2014, initiating an adversary proceeding ("Adversary Proceeding") which asserts that any indebtedness from the Debtor to the Wallaces was included in the Debtor's Discharge pursuant to 11 U.S.C. § 727. The Adversary Proceeding is pending.

6. <u>Hearing on June 19, 2014.</u>

    a. At the hearing, counsel for the Debtor clarified that because the Wallaces' actions, even if found to have violated the discharge injunction, do not appear to have been willful violations, the Debtor is not seeking any sort of damages against the Wallaces.

    b. Based upon that concession by the Debtor, the request for sanctions is abandoned and will be deemed withdrawn by the Debtor. The Debtor is instead requesting that the court either:

        i. Find that the Claim has been discharged and enter an Order compelling the Superior Court to dismiss the State Court Action with prejudice; or

        ii. Enter an Order stating that the State Court Action shall be stayed until this court can make a determination regarding the dischargeability of the Claim.

5

B.  THE ISSUE

1. While this matter originally came before the court on the Motion for Sanctions, the real issue to be determined is whether this court, or the Superior Court, has jurisdiction to determine the dischargeability of the State Court Action causes of action pursuant to 11 U.S.C. § 523.

   a. Wallaces' Position. The Wallaces assert that a determination whether their Claim was discharged should be made by the Superior Court in the State Court Action, because the Debtor raised the Discharge as an affirmative defense in his Answer. *In re Toussaint*, 259 B.R. 96, 101 (Bankr. E.D.N.C. 2000) (citing *In re McGregor*, 233 B.R. 406, 409 (Bankr. S.D. Ohio 1999)).

   b. Debtor's Position. The Debtor believes this court has exclusive jurisdiction over, at a minimum, the cause of action alleging fraud in the Amended Complaint, pursuant to 11 U.S.C. §§ 523(a)(2) and (c). *See Toussaint*, 259 B.R. at 100 n.5; Fed. R. Bankr. P. 4007 advisory committee's note.

2. As explained below, the court will not be making a final determination on whether this court has exclusive or concurrent jurisdiction over the issue of whether the Claim has been discharged. The pending Adversary Proceeding is a more appropriate forum for such an inquiry; however, this Order will serve to clarify which Bankruptcy Code provisions apply to this case and will narrow the issues to be tried in the Adversary Proceeding.

C.  DISCUSSION

1. Causes of Action *Other than* Under Sections 523(a)(2), (4) and (6). The State Court Action contains a fraud claim, so 11 U.S.C. § 523(a)(2)[5] is invoked. The same analysis

---

[5] 11 U.S.C. § 523(a)(2) states in full that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension,

that the court will apply to the fraud claim would apply to the Wallaces' causes of action, if any, which allege a debt of the kind described in 11 U.S.C. § 523(a)(4) or (6). Before analyzing a Section 523(a)(2), (4) or (6) claim, the court must determine the effect of other subsections of Section 523(a). To the extent that the Amended Complaint contains causes of action under any other provision of Section 523(a),[6] or causes of action which are not listed in Section 523(a), those debts were discharged in the Debtor's "no asset" case, regardless of whether the Wallaces had notice of the Debtor's case. *Toussaint*, 259 B.R. 96, 103.[7] Because the portions of the Claim stemming from "non-Section 523(a)(2), (4) or (6) debts" (*e.g.*, the cause of action alleging negligence) have been discharged, the court will not address those causes of action other than to affirm they have been discharged.

    2.    <u>Nondischargeability Actions Under Sections 523(a)(2), (4) and (6).</u>

    a.    Section 523(a) itemizes certain debts from which a debtor is not discharged when a discharge is granted "under section 727, 1141, 1228(a), 1228(b), or 1328(b)." 11 U.S.C. § 523(a). Out of the 19 subsections of debts which are excepted from a debtor's discharge under § 523(a), a deadline is set with respect to Sections 523(a)(2), (4) and (6). A creditor must request a determination by the court that a debt is of the kind stated in Section 523(a)(2), (4) or (6), within 60 days after the date first set for the debtor's meeting of creditors. 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c).

    b.    When a creditor asserts that a debt qualifies as one listed in Section 523(a)(2), (4) or (6), the bankruptcy court has exclusive jurisdiction to make that determination. *Merritt v. Dunston (In re Merritt)*, 2001 Bankr. LEXIS 2371, at *9-10

---

renewal, or refinancing of credit, to the extent obtained by . . . actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ."

[6] Other than those under Section 523(a)(2), (4) or (6).

[7] *Toussaint* provides an excellent practical analysis of why a case should not be reopened when a nondischargeable debt is not listed in a "no asset" Chapter 7 case.

7

(Bankr. M.D.N.C. Aug. 30, 2001); *Toussaint*, 259 B.R. at 100 n.5; Fed. R. Bankr. P. 4007 advisory committee's note.

3.   The Exception.

   a.   Beginning with the premise that the Wallaces' fraud cause of action falls under 11 U.S.C. § 523(a)(2), the court must determine whether any exception to § 523(a)(2) applies. If one or more exceptions apply, this court's jurisdiction over a finding of whether the Claim was discharged may be affected.

   b.   Debts stemming from fraud on the part of a debtor are generally nondischargeable pursuant to 11 U.S.C. § 523(a)(2), unless § 523(c)(1) applies. Section 523(c)(1) provides an exception to § 523(a)(2), in that if a creditor does not object to the discharge of a fraud-related debt, that debt is discharged, "except as provided in [11 U.S.C. § 523(a)(3)(B)]".[8] 11 U.S.C. § 523(c)(1).

4.   The Exception to the Exception.

   a.   As with most legislation, the Bankruptcy Code has exceptions to exceptions. Section 523(a)(3)(B) is the exception to the § 523(c)(1) exception. Section 523(a)(3)(B) renders nondischargeable certain fraud-related debts that would otherwise be discharged under § 523(c)(1) due to the creditor's failure to object to dischargeability. Section 523(a)(3)(B) applies to a fraud-related debt if:

      i.   The debtor did not list the debt and the name of the creditor, if known to the debtor, on the debtor's list of creditors and schedules; and

      ii.  The absence of the debt from the debtor's list of creditors and schedules resulted in the creditor having no notice or actual knowledge of the case

---

[8] For a detailed analysis of the legislative history of 11 U.S.C. § 523(c) and its exception, 11 U.S.C. § 523(a)(3), see *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 923 (Bankr. E.D. Cal. 1995).

in time to object to the dischargeability of the debt within the time limits set by Federal Rule of Bankruptcy Procedure 4007(c). 11 U.S.C. § 523(a)(3).

    b.    If § 523(a)(3)(B) applies to a debt, that debt is nondischargeable. This outcome makes sense, because as noted above, Fed. R. Bankr. P. 4007(c) requires a creditor to object to the dischargeability of a § 523(a)(2), (4) or (6) debt within 60 days after the date first set for the debtor's meeting of creditors. If a creditor is given no notice of a debtor's bankruptcy petition, and otherwise is unaware of the case, it would be inequitable for the creditor to lose the opportunity to object to dischargeability because it became aware of the debtor's case after the deadline set by Rule 4007(c).

    c.    If § 523(a)(3)(B) does not apply, though, then neither does the exception to 11 U.S.C. § 523(c)(1), and if a creditor does not object timely to the discharge of a fraud-related debt, that debt is discharged.

5.    <u>Application to the Facts.</u> The court will now apply the relevant statutory provisions to the Debtor's case.

    a.    <u>The Exception.</u> The Amended Complaint alleges a debt which falls within the purview of § 523(a)(2). Because the Wallaces did not assert timely that their Claim should be excepted from discharge, the Claim was discharged pursuant to § 523(c)(1) when the Debtor received his discharge, *unless* § 523(a)(3)(B) applies.

    b.    <u>The Exception to the Exception.</u>

        i.    The Debtor asserts that based on the pleadings and the summary judgment rendered in the State Court Action eight months prior to the Debtor's Petition Date, the court can find as a matter of law that the Debtor had a right to assume the Wallaces had no claim against him, and that the Debtor thus was not

9

aware of the Claim. If he was unaware of the Claim "as a matter of law," the Debtor argues, the court should find that § 523(a)(3)(B) is inapplicable to the Claim.

    ii.    The court finds that a determination whether § 523(a)(3)(B) applies in this case is a factual issue most appropriately decided in a trial setting. While the Wallaces may not have known of the Debtor's bankruptcy, the Debtor may not have known about the Claim the Wallaces are now asserting. Whether the Wallaces knew of the Debtor's bankruptcy, despite not being listed on the Debtor's schedules, is a matter for this court to decide when witnesses are available to provide testimony. The extent of the Debtor's knowledge of the allegations contained in the initial Complaint may also be relevant. *See Mitchell v. Bigelow (In re Mitchell)*, 418 B.R. 282, 288 (B.A.P. 8th Cir. 2009) (placing burden on the debtor "to list each and every entity which has or may assert a claim against [him]"); *c.f. Aetna Cas. & Sur. Co. v. Wilson (In re Wilson)*, 200 B.R. 72, 74 (Bankr. M.D. Fla. 1996) (finding that the debtor "had no basis to assume or even to suspect that" plaintiff would bring charges against the debtor, even though the plaintiff took his statement under oath during proceedings leading up to two lawsuits against the debtor's company).

    iii.    The Adversary Proceeding, which asserts that the Claim was discharged, will necessitate a determination whether the Claim was discharged pursuant to § 523(c)(1), or whether § 523(a)(3)(B) applies, rendering the Claim nondischargeable. These are factual issues that must be determined and have bearing on the proper jurisdiction for the Claim adjudication.

    iv. Until the court can determine whether the § 523(a)(2) claim has been "transmuted" into a claim under § 523(a)(3)(B), it remains a claim brought pursuant to 11 U.S.C. § 523(a)(2). *Franklin*, 179 B.R. at 924. The court has exclusive jurisdiction over such claims. *Merritt*, 2001 Bankr. LEXIS at *9-10; *Toussaint*, 259 B.R. at 100 n.5; Fed. R. Bankr. P. 4007 advisory committee's note.

6. <u>Exclusive or Concurrent Jurisdiction.</u>

 a. The Wallaces contend that the court does not in fact have exclusive jurisdiction, even to determine the dischargeability of a § 523(a)(2) claim, because by not listing the Wallaces on his schedules, the Debtor effectively waived this court's exclusive jurisdiction. In support of this contention, the Wallaces cite *In re Ahmadpour*, 2010 Bankr. LEXIS 144 (Bankr. E.D. Va. Jan. 8, 2010), which in turn cites *In re Toussaint*. The debtor in *Ahmadpour* had a default judgment entered against her prior to filing her petition, but did not list the assignee judgment creditor or the assignor judgment creditor in her schedules. 2010 Bankr. LEXIS 144, at *2. The *Ahmadpour* court based its jurisdictional findings on the fact that the debtor did not list the assignor judgment creditor, although known to the debtor, on her schedules. 2010 Bankr. LEXIS 144, at *5. Citing *Toussaint*, the court stated that "by failing to list the creditor, the debtor effectively waives the exclusive jurisdiction of the bankruptcy court to determine the dischargeability of the debt, and that issue may be determined in a non-bankruptcy court having jurisdiction to adjudicate or enforce the debt." *Id*. *Ahmadpour* is distinguishable from this case, in that the debtor admitted she was aware of the creditor. Further, the *Ahmadpour* court applied the listed/unlisted analysis to § 523(c) and Fed. R. Bankr. P. 4007(b), even though neither makes such a distinction. The fact that a debt, which would

11

otherwise be discharged pursuant to § 523(c), was not listed on a debtor's schedules does not automatically thrust that debt under the purview of § 523(a)(3). Each element of § 523(a)(3) must be met before a fraud-related claim loses its status as a debt under § 523(a)(2) and becomes a debt over which this court has only concurrent jurisdiction.

      b.      In determining whether the Claim falls under § 523(a)(2) or § 523(a)(3), the court will necessarily make a finding whether this court has exclusive or concurrent jurisdiction to determine the Claim's dischargeability. If the Claim has been discharged pursuant to § 523(c)(1), the court, with exclusive jurisdiction, shall rule that the discharge injunction prohibits the Wallaces from prosecuting the Amended Complaint. If the Claim has not been discharged because § 523(a)(3)(B) applies, then by becoming a debt under § 523(a)(3)(B), the Claim becomes one over which this court has concurrent jurisdiction. *See* 28 U.S.C. § 1334(b). The factual inconsistency must be resolved before jurisdiction can be determined. The Wallaces allege the Debtor knew about the Claim and did not list them as creditors. The Debtor alleges that he did not know about the Claim or, at least, that the Claim was being asserted against him individually.

      c.      If the court concludes it has concurrent jurisdiction, the court will then decide if, by filing an Answer in the State Court Action, the Debtor lost the right to remove the Amended Complaint to this court to be heard on its merits.

      d.      The court is not convinced that it was proper for the Superior Court to allow the Complaint to be amended after summary judgment had been reached. At the court's request, the Wallaces tendered the case of *Travelers Indemnity Co. of Conn. v. Triple S Mktg. Grp.*, No. COA10-862, slip op. (N.C. App. July 19, 2011), to support the contention that the Wallaces may amend their Complaint to add the Debtor (and

MacGregor) as parties *after* entry of a judgment in the State Court Action. *Travelers* does not provide the authority asserted by the Wallaces, and merely states that supplemental proceedings cannot be used by a judgment creditor to pierce the corporate veil to reach principals that were not named in the original complaint. *Travelers* does not say a complaint can be amended after judgment has been rendered. While the procedural history of the State Court Action troubles the court, such issues are not before the court at this time. A determination of which court shall hear the Claim on the merits, if applicable, shall be properly made in the Adversary Proceeding. Until this court hears the Adversary Proceeding, the State Court Action should be stayed; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion for Sanctions, as orally amended by Mr. Hendren at the hearing, is allowed to the extent that the State Court Action shall be stayed until this court can make a determination regarding the dischargeability of the Claim; and

2. The court will determine the narrow issue of whether 11 U.S.C. § 523(a)(3) applies to the Claim in the Adversary Proceeding.

END OF DOCUMENT